UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. _____

JEAN L. STANLEY AND LORETTA CLUNE )
)
Plaintiffs, )
)
v. )
)
INTERINVEST CORPORATION, INC., )
DR. HANS P. BLACK, STANLEY T. SCHMIDT, )
AND ALEXANDER R. BLACK, )
)
Defendants, )
)
v. )
)
HIGHBANK PROPERTIES, INC., )
)
Reach and Apply Defendant, )
)
v. )
)
BANK OF AMERICA, N.A., CITIZENS BANK, )
N.A., STATE STREET BANK AND TRUST )
COMPANY, FMR LLC, CITIBANK, N.A., )
SANTANDER BANK, N.A., WELLESLEY )
BANK, SOUTH SHORE BANK, ROCKLAND )
TRUST COMPANY, TD BANK, N.A., TD )
AMERITRADE, INC., CENTURY BANK AND )
TRUST COMPANY, EASTERN BANK, )
CHARLES SCHWAB & CO., INC., )
SCOTTRADE, INC., JP MORGAN CHASE, N.A., )
)
Trustee Defendants. )

## VERIFIED COMPLAINT AND JURY DEMAND

## PARTIES

1.    Plaintiff, Jean Stanley ("Ms. Stanley"), is an individual, with a primary residence

located at 25 Bayland Way in Eastham, Barnstable County, Massachusetts.

1

2.     Plaintiff Loretta Clune ("Mrs. Clune") is an individual with a primary residence located at 6781 Villas Drive East, Boca Raton, Florida. Ms. Stanley and Ms. Clune shall be collectively referred to hereafter as the "Plaintiffs".

3.     Defendant, Interinvest Corporation ("Interinvest"), is a corporation organized and existing under the laws of Massachusetts, with a principal office located at 192 South Street, Suite 600, Boston, Suffolk County, Massachusetts. Upon information and belief, Interinvest is a Registered Investment Advisor registered with the United States Securities and Exchange Commission ("SEC") (SEC No. 801-15298), the Financial Industry Regulatory Authority ("FINRA") (CRD No. 108346), Massachusetts, and Vermont. Upon information and belief, at all relevant times hereto, Interinvest managed over ninety million dollars ($90,000,000) in assets and had two (2) employees.

4.     Upon information and belief, Defendant, Dr. Hans P. Black ("Dr. Black"), is a Canadian resident and an Investment Adviser Representative who, at all relevant times hereto, was employed by Interinvest, with a principal place of business located at 192 South Street, Suite 200, Boston, Suffolk County, Massachusetts. Dr. Black is, upon information and belief, currently registered with the SEC as an Investment Adviser Representative of Interinvest and with FINRA (CRD No. 4345879) and in Massachusetts. Dr. Black is the sole owner, President, and Chief Investment Officer of Interinvest.

5.     Upon information and belief, Defendant, Stanley T. Schmidt ("Schmidt"), is an individual and an Investment Adviser Representative who resides at  and owns an interest in  the property located at 194 Locust Hill Rd., Shelburne, Chittenden County, Vermont. Schmidt was employed by Interinvest, with a principal place of business located at 192 South Street, Suite 350, Boston, Suffolk County, Massachusetts. Upon information and belief, Schmidt served as

2

President of Interinvest at the time during which some of the events that give rise to Plaintiffs' causes of action occurred.

6.     Upon information and belief, Alexander R. Black ("Alexander") is an individual who resides at 2706 Whitney Avenue, Baltimore, Maryland. Alexander was an Investment Adviser Representative who was employed by Interinvest from March of 2009 until August of 2014. Alexander was a "Control Person" of Interinvest for the entirety of his employment there as well as a "Portfolio Manager" from approximately January of 2010 until March of 2014. Alexander served as President, Chief Compliance Officer, and Director at the time during which many of the events that give rise to Plaintiffs' causes of action occurred.

7.     Reach and Apply Defendant Highbank Properties, Inc. ("Highbank") is a foreign corporation that was domesticated under the laws of the Commonwealth of Massachusetts pursuant to G.L. c. 156D, § 9.22 on or around March 24, 2010 and has a principal place of business located at 141 Highbank Road, South Yarmouth, Massachusetts, 02664. Upon information and belief, Highbank holds property in which Alexander owns a beneficial interest.

8.     Trustee Defendant Bank of America, N.A., is a banking institution with multiple places of business including an office located at Financial Center Back Bay, 440 Boylston Street, Boston, Massachusetts 02116, located within the Commonwealth of Massachusetts. Upon information and belief, Bank of America, N.A. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

9.     Trustee Defendant Citizens Bank, N.A., is a banking institution with multiple places of business including an office located at Exchange Place, 53 State Street, Boston,

3

Massachusetts 02109, located within the Commonwealth of Massachusetts. Upon information and belief, Citizens Bank, N.A. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

10.     Trustee Defendant State Street Bank and Trust Company ("State Street"), is a Massachusetts trust company with a principal office located at 1 Heritage Drive, North Quincy, Massachusetts 02171. Upon information and belief, State Street holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

11.     Trustee Defendant FMR LLC is a financial services conglomerate, also known as Fidelity Investments, with several places of business located within the Commonwealth of Massachusetts including a principal office located at 82 Devonshire Street, Boston, Massachusetts 02109. Upon information and belief, FMR LLC. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

12.     Trustee Defendant CitiBank, N.A., is a banking institution with multiple places of business located within the Commonwealth of Massachusetts and a place of business located at 2970 Belcrest Center Drive, Ste. 104, Hyattsville, MD 20782. Upon information and belief, CitiBank, N.A. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

4

13.     Trustee Defendant Santander Bank, N.A., is a banking institution with multiple places of business located within the Commonwealth of Massachusetts, including an office located at 75 State Street, Boston, Massachusetts 02109. Upon information and belief, Santander Bank, N.A. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

14.     Trustee Defendant Wellesley Bank, is a banking institution organized under the laws of Massachusetts with multiple places of business located within the Commonwealth of Massachusetts, including an office located at One Federal Street, Boston, Massachusetts 02110. Upon information and belief, Wellesley Bank holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

15.     Trustee Defendant South Shore Bank, is a banking institution organized under the laws of Massachusetts with multiple places of business located within the Commonwealth of Massachusetts, including a principal office located at 1530 Main Street, South Weymouth, Massachusetts 02190. Upon information and belief, South Shore Bank holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

16.     Trustee Defendant Rockland Trust Company is a banking institution organized under the laws of Massachusetts with a principal place of business located at 288 Union Street, Rockland, Massachusetts 02370. Upon information and belief, Rockland Trust Company holds

goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

17.   Trustee Defendant TD Bank, N.A., is a banking institution with multiple places of business within the Commonwealth of Massachusetts, with an office located at 200 State Street, Boston, Massachusetts 02109.  Upon information and belief, TD Bank, N.A. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

18.   Trustee Defendant TD Ameritrade, Inc., is a foreign corporation with several places of business located within the Commonwealth of Massachusetts, with an office located at 50 Post Office Square, Suite 104, Boston, Massachusetts 02110.  Upon information and belief, TD Ameritrade, Inc. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

19.   Trustee Defendant Century Bank and Trust Company, is a banking institution with multiple places of business located within the Commonwealth of Massachusetts, with a principal office located at 400 Mystic Avenue, Medford, Massachusetts 02155.  Upon information and belief, Century Bank and Trust Company holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

20.     Trustee Defendant Eastern Bank is a banking institution with multiple places of business within the Commonwealth of Massachusetts, with an office located at 155 Dartmouth Street, Boston, Massachusetts. Upon information and belief, Eastern Bank holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

21.     Trustee Defendant Charles Schwab & Co., Inc., is a foreign corporation with a place of business located at 127 Congress St., Boston, Massachusetts. Upon information and belief, Charles Schwab & Co., Inc. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

22.     Trustee Defendant Scottrade, Inc., is a foreign corporation with multiple places of business within the Commonwealth of Massachusetts, with an office located at 155 Federal Street, Ste. 160, Boston, Massachusetts 02110. Upon information and belief, Scottrade, Inc. holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

23.     Trustee Defendant JP Morgan Chase, N.A., ("Chase") is a banking institution with a place of business located at 50 Rowes Wharf, Boston, Massachusetts. Upon information and belief, Chase holds goods, effects, monies, accounts, deposits, credits, common stock and marketable securities in the name of defendant Interinvest, defendant Stanley T. Schmidt, defendant Alexander R. Black, whether held individually, jointly or with others.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §
1331 as this action arises out of the laws of the United States.

25.     Further, this matter concerns violations of the Securities and Exchange Act of
1934, 15 U.S.C. § 78aa, and 17 C.F.R. § 240.10(b)(5), over which the district courts of the
United States have exclusive jurisdiction.

26.     This Court has supplemental jurisdiction over the related state law claims in this
action pursuant to 28 U.S.C. § 1367(a).

27.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial
part of the events and/or omissions giving rise to this action occurred in this district.

28.     This Court has personal jurisdiction over Interinvest because Interinvest is a
Massachusetts corporation with a principal place of business located within the Commonwealth.

29.     This Court has personal jurisdiction over Dr. Black pursuant to the Massachusetts
Long Arm Statute, G.L. c. 223A, § 3(a), (c) and (d) because Dr. Black is the President and owner
of Interinvest, who at all times relevant hereto, regularly did business within the Commonwealth,
derived substantial revenue from services rendered within the Commonwealth, and has
committed acts and/or omissions both within and outside the Commonwealth that caused tortious
injury to Plaintiffs.

30.     This Court has personal jurisdiction over Schmidt pursuant to the Massachusetts
Long Arm Statute, G.L. c. 223A, § 3(a), (c) and (d) because Schmidt served as President of
Interinvest, regularly did business within the Commonwealth, derived substantial revenue from
services rendered within the Commonwealth, and has committed acts and/or omissions both
within and outside the Commonwealth that caused tortious injury to Plaintiffs.

8

31.     This Court has personal jurisdiction over Alexander pursuant to the Massachusetts Long Arm Statute, G.L. c. 223A, § 3(a), (c) and (d) because Alexander served as an Investment Adviser Representative who was employed by Interinvest, a "Portfolio Manager" as well as serving as President, Chief Compliance Officer and Director of Interinvest, regularly did business within the Commonwealth, derived substantial revenue from services rendered within the Commonwealth, and has committed acts and/or omissions both within and outside the Commonwealth that caused tortious injury to Plaintiffs.

32.     This Court has personal jurisdiction over Highbank because it is domesticated under the laws of the Commonwealth of Massachusetts pursuant to G.L. c. 156D, § 9.22 and has a principal place of business in South Yarmouth, Massachusetts.

## FACTS

### JEAN STANLEY

33.     Ms. Stanley met with Dr. Black in the spring of 2000 to open investment accounts with Interinvest.

34.     Ms. Stanley came to know of Dr. Black and Interinvest because Dr. Black was married to Ms. Stanley's cousin, Janet Black, at the time of this meeting and had been married to her since 1975.

35.     Ms. Stanley knew that other family members had invested with Dr. Black. Those family members reported to her that Dr. Black was very conservative with their investments.

36.     As a single woman who was no longer working and an expectant mother, Ms. Stanley desired a conservative investment strategy and was comfortable with the feedback she had received regarding Dr. Black and Dr. Black's representations that he would follow a conservative investment strategy with respect to her investments.

9

37. On May 15, 2000, Ms. Stanley entered into three (3) Custodial Service Agreements with Chase to open three (3) custodial accounts ("Stanley Custodial Accounts") for the purpose of safeguarding from misappropriation the investment assets managed by Interinvest. The three (3) accounts which resulted were named:

    a. "Jean L. Stanley" (her individual account);

    b. "Jean L. Stanley – SEP – IRA;" and

    c. "Jean L. Stanley Rollover IRA."

38. The Custody Services Agreement for Ms. Stanley's individual account specified that Interinvest did not have the authority to issue checks or remit funds by wire transfer drawn against that account. See Exhibit A, Custody Services Agreement.

39. On May 15, 2000, Ms. Stanley and Chase also entered into a "Custody Account Funds Transfer Agreement," which appointed Interinvest as Ms. Stanley's agent to give certain payment orders for the three (3) Stanley Custodial Accounts. Exhibit B, Custody Account Funds Transfer Agreement.

40. Upon information and belief, State Street succeeded to the rights, obligations, and liabilities of Chase as set forth in the Custody Services Agreements as a result of one (1) or more corporate mergers or acquisitions.

41. On or around May 30, 2000, Ms. Stanley and Interinvest entered into three (3) Investment Advisory Agreements (the "Investment Agreements") for investment advisory services concerning the three Stanley Custodial Accounts and nearly seven hundred thousand dollars ($700,000) of Ms. Stanley's money. See Exhibit C, Investment Agreements.

42. The Investment Agreements were executed by Ms. Stanley and Schmidt, as agent of Interinvest.

10

43.     Upon information and belief, Dr. Black was the Interinvest employee who was primarily responsible for managing Ms. Stanley's assets pursuant to the Investment Agreements.

44.     Because Ms. Stanley was no longer working and an expectant mother who financially supported both her son and his father, she relied on the funds in the Stanley Custodial Accounts to provide for their living.

45.     As such, Ms. Stanley was careful to ensure that her financial goals were clear: "Schedule A" to each of the Investment Agreements identifies Ms. Stanley's Investment Objectives and Policies as "Preservation of capital; income; growth." See Exhibit C, Investment Agreements.

46.     Dr. Black met with Ms. Stanley on an annual basis to discuss his global investment outlook, as well as new investments. Dr. Black sent personal letters to Ms. Stanley, providing her with updates to markets, global outlooks, and investment positions.

47.     For the first ten (10) years of the business relationship, Dr. Black, Interinvest, and its employees exhibited excellent customer service, were attentive to Ms. Stanley's inquiries, and the investment strategies employed by Interinvest were consistent with Ms. Stanley's investment objectives.

48.     Eventually, Dr. Black reduced, and ultimately ceased, sending letters to Ms. Stanley. Interinvest also stopped sending newsletters.

49.     A series of personal tragedies occurred from 2012 through 2014 that completely occupied Ms. Stanley's time and attention.

50.     Dr. Black was aware of Ms. Stanley's personal tragedies through their mutual familial connections.

11

51.     In or around late 2013, Dr. Black's marriage to Janet Black, Ms. Stanley's cousin, began to decline.

52.     Upon information and belief, Dr. Black, knowing Ms. Stanley's personal commitments required substantial time and attention, began to capitalize on that knowledge and used it improperly to his advantage.

53.     In January of 2014 without Ms. Stanley's knowledge or permission, Interinvest wired one hundred thousand dollars ($100,000) out of Ms. Stanley's individual account, in two (2) separate transactions of fifty thousand dollars ($50,000) each, to a bank in Santa Clara, California.

54.     Interinvest used the one hundred thousand dollars ($100,000) to purchase unsecured notes in a company named Wi2Wi Corporation ("Wi2Wi").

55.     Upon information and belief, Dr. Black had substantial interest in, and exercised significant control over, Wi2Wi. Upon information and belief, Dr. Black also received substantial benefit and consideration from Wi2Wi. This was not disclosed to Ms. Stanley.

56.     Dr. Black also served as a Director on Wi2Wi's Board of Directors since 2006, including time spent as its chairman. This was not disclosed to Ms. Stanley.

57.     The Wi2Wi unsecured notes did not appear in Ms. Stanley's account until April 21, 2014. When they finally appeared, they were shown as having a mere value of one thousand dollars ($1,000).

58.     When Ms. Stanley brought the issue to Dr. Black's attention, he told her that State Street misreported the value of the note, and that he would call to have the value corrected.

59.     In fact, Ms. Stanley learned that Dr. Black regularly provided State Street the values for a number of Ms. Stanley's assets over the telephone from Montreal.

12

60. In February 2014, Dr. Black notified Ms. Stanley that her cousin, Janet Black, and he were separating.

61. At the time, Ms. Stanley's personal commitments continued to consume her time and attention.

62. Amid concern over Dr. Black's investment decisions and the lack of communication she had received from Dr. Black or Interinvest, on July 29, 2014, Ms. Stanley sent an email to Interinvest, directing it to cease trading in her accounts and provided clear notice that she intended to transfer her accounts out of Interinvest. See Exhibit D, email dated July 29, 2014.

63. Shortly after this instruction, Dr. Black and Ms. Stanley had a conversation on July 29, 2014 and he convinced her to keep the accounts with Interinvest.

64. However, Ms. Stanley decided to keep the accounts with Interinvest only on the condition that Interinvest follow additional account rules.

65. These additional account rules included that: (1) Interinvest take no action in her accounts without her prior authorization; (2) Interinvest provide target areas on all positions; and (3) Interinvest provide her with stop loss levels for capital preservation.

66. Ms. Stanley reiterated her investment objectives and original account rules to preserve capital and income through conservative positions to Dr. Black in this conversation.

67. Ms. Stanley also explicitly instructed Interinvest to cash in the Wi2Wi notes as soon as possible.

68. Instead of following Ms. Stanley's explicit instruction to remove the Wi2Wi notes from her account as soon as possible, Interinvest converted the notes to stock in November 2014,

13

but did not cash them pursuant to Ms. Stanley's instruction and did not notify her of the option to sell when the notes were converted.

69.     Instead, Interinvest continued to hold the Wi2Wi stock in Ms. Stanley's accounts against her clear and unequivocal instructions.

70.     As of March 31, 2015, the Wi2Wi stock was valued at one thousand seven hundred dollars ($1,700) in Ms. Stanley's account.

71.     Dr. Black misrepresented to Ms. Stanley that the Wi2Wi stock value contained an error and that it would be corrected by April 13, 2015.

72.     Interinvest's Form ADV Part 2A (April 30, 2014) details the Risks of Investing in Foreign Securities, stating, in part, that "international investing entails a number of risks not normally experienced or considered by purely domestic investors," and that "Prospective and existing clients are encouraged to discuss with Interinvest any particular portfolio orientation they deem beneficial to their circumstances. Clients are encouraged to contact Interinvest if they feel that Interinvest's evolving investment approach no longer meets their investment objectives or if their personal objectives have changed. . . . Prospective and existing clients are encouraged to discuss with Interinvest any particular cash management constraints and guidelines they deem necessary for their unique circumstances." See Exhibit E, Form ADV Part 2A, p. 9-12.

73.     Despite the fact that Ms. Stanley had done exactly that in July 2014 when she discussed with Interinvest and Dr. Black that the investment approach he was employing with respect to her account did not meet her long-standing investment objectives of preserving capital and her desire for a conservative approach, Interinvest continued a pattern of extremely risky investments that were clearly not suitable for Ms. Stanley's investment objectives.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

74. As of March 31, 2015, Interinvest had placed over seventy nine percent (79%) of the "Jean L. Stanley" account and nearly fifty percent (50%) of the "Jean L. Stanley – SEP – IRA" account in foreign securities.

75. As of March 31, 2015, the foreign assets were down in value by forty-four percent (44%).

76. In addition to engaging in risky investments that were unsuitable for Ms. Stanley's needs, Interinvest and Dr. Black repeatedly disregarded Ms. Stanley's account rules.

77. Interinvest's Form ADV Part 2A (April 30, 2014) provides additional tools for its clients to limit Interinvest's authority to transact, stating "clients may specifically limit Interinvest's authority to transact in certain types of investments…" and "clients may also define minimum or maximum ranges of security exposure in their account or set any other guidelines which may be appropriate in their circumstances." See Exhibit E, Form ADV Part 2A, p. 19.

78. The Form ADV Part 2A continues, stating that "Interinvest will determine whether it can comply with all client guidelines" and will advise the client if it is not capable of compliance. See Exhibit E, Form ADV Part 2A, p. 19.

79. Ms. Stanley, again, did exactly that in July of 2014, setting clear rules that: (1) Interinvest take no action on her accounts without her prior authorization; (2) Interinvest provide target areas on all positions; and (3) Interinvest provide her with stop loss levels for capital preservation.

80. Dr. Black assured Ms. Stanley in the July 2014 meeting that he was capable of complying with Ms. Stanley's rules and convinced her to remain Interinvest's client.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

81.     However, almost immediately after the July 2014 meeting, Dr. Black and Interinvest disregarded Ms. Stanley's explicit instructions that Interinvest take no action on her accounts without her prior authorization.

82.     In September of 2014, one hundred and fifty thousand (150,000) shares of Cornerstone Capital securities appeared in her "Jean L. Stanley Rollover IRA" account.

83.     Ms. Stanley did not authorize the purchase of these shares.

84.     Dr. Black repeatedly represented to Ms. Stanley that the error would be corrected, but failed to take action to remedy the issue.

85.     Dr. Black and Interinvest again made unauthorized trades in Ms. Stanley's accounts to purchase additional shares of Direxion on five (5) separate occasions: January 28, 2015, February 3, 2015, February 20, 2015, February 24, 2015, and February 27, 2015.

86.     The Prospectus for the Direxion securities states that "the Fund seeks daily inverse leveraged investment results and does not seek to achieve its stated investment objective over a period of time greater than one day." See Exhibit F, Direxion Prospectus.

87.     The Direxion securities are very high risk and are not meant to be held as a long-term position, yet Interinvest has held Direxion in Ms. Stanley's accounts, including her retirement account, for over one (1) year.

88.     Despite Interinvest's obligation to monitor portfolios and ensure that transactions are correct in terms of quantity and price as described in Interinvest's Form ADV Part 2A (April 30, 2014), Item 13, Dr. Black admitted that there are errors in Ms. Stanley's account with respect to several items, but failed to correct them.

89.     Dr. Black and Interinvest have not provided Ms. Stanley with target areas or stop loss levels.

16

90.　Dr. Black and Interinvest failed and refused to provide Ms. Stanley with a strategy to protect capital.

91.　In addition to failing and refusing to manage Ms. Stanley's accounts in a way that was consistent with her investment objectives, as well as purchasing securities that were unsuited for her needs, Interinvest, Schmidt, Dr. Black, and Alexander also failed to disclose numerous, material conflicts of interest and compensation arrangements.

92.　Upon information and belief, Dr. Black operated and/or controlled investment and investment advisory corporations in Montreal, Boston, Zurich, and Bermuda, including all of the following entities: Interinvest Consulting Corporation of Canada in Montreal, Quebec; Interinvest Corporation Inc. in Boston, Massachusetts; Interinvest (Bermuda) Limited in Bermuda; Zurmont Research Corp. in Montreal, Quebec; HB Investment & Finanz AG in Zurich, Switzerland; Hans J. Black Foundation in Montreal, Quebec.

93.　Upon information and belief, Dr. Black, at all relevant times hereto, also had substantial interests in, received substantial benefits and consideration from, and exercised significant control over, the following publicly traded corporations:

　　a.　Williams Creek Gold Ltd. ("Williams Creek");

　　b.　Wi2Wi;

　　c.　Tyhee Gold Corporation ("Tyhee"); and

　　d.　Amorfix Life Sciences, Ltd. ("Amorfix").

94.　Upon information and belief, Dr. Black currently serves, or has previously served, on the Board of Directors of Williams Creek, Wi2Wi, Tyhee, and Amorfix, among others.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

95. Upon information and belief, Dr. Black received significant monies from: Tyhee; Wi2Wi: and Amorfix through Zurmont Research Corp. - a company he controls; including approximately:

    a. thirty thousand dollars ($30,000) to forty thousand dollars ($40,000) from Amorfix;

    b. one hundred thousand dollars ($100,000) from Wi2Wi; and

    c. one hundred thousand dollars ($100,000) from Tyhee.

96. Upon information and belief, Dr. Black also received stock options from these companies.

97. Upon information and belief, Dr. Black, at all relevant times hereto, also had a paid consulting arrangement with Williams Creek.

98. Upon information and belief, Williams Creek paid Dr. Black approximately two hundred thirty seven thousand seven hundred seventy two dollars ($237,772) during the fiscal year ending in January of 2013 and one hundred sixteen thousand four hundred sixty four dollars ($116,464) during the fiscal year ending in January of 2014.

99. Ms. Stanley's investment portfolio contained significant investments in each of these companies that were purchased by Interinvest and Dr. Black.

100. Interinvest, Dr. Black, Schmidt, and Alexander failed to disclose the extent of any of these affiliations or compensation arrangements to Ms. Stanley.

101. Further, Tyhee, Amorfix, Williams Creek Gold, and Wi2Wi are very high-risk, thinly traded, low price stocks that were completely unsuitable for Ms. Stanley's objective of capital preservation and her clearly communicated low tolerance for risk.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

102. This information was material. Had Ms. Stanley been aware of these grave conflicts of interest, she would not have maintained her accounts with Interinvest or invested in these companies.

103. Interinvest, Schmidt, and Alexander also failed to disclose Dr. Black's involvement in a number of civil actions and resulting liabilities, including the following:

    a. On November 24, 2004, Montrawest Ltd. filed a civil action against Intercoinvest in Quebec, Canada, in Montreal Superior Court seeking over one million dollars ($1,000,000) in damages, alleging that Dr. Black directed a two million four hundred thousand dollar ($2,400,000) loan to Intercoinvest, a company controlled by Dr. Black, from Montrawest Ltd., and that the sole shareholder for Montrawest attempted to cancel the loan and request a refund for over a year. The case settled;

    b. On February 22, 2006, 102751 Canada Inc. filed a lawsuit in Quebec, Canada, in the District of Montreal Superior Court against Dr. Black, his mother, and other defendants seeking damages in excess of seven million dollars Canadian ($7,000,000 Cdl) alleging that Dr. Black transferred that amount without permission, that there were no repayment terms, that he had no intention of returning the money, that he knowingly concealed the existence of the transfers from the owner's heirs, that he acted in bad faith, and had committed fraud. The case settled in March of 2012. Dr. Black has defaulted on the settlement;

    c. On July 15, 2008, Rolf Herzog, a resident of Switzerland, filed a civil action against Dr. Black, Interinvest (Bermuda) Limited, and Interinvest Consulting Corp. of Canada, Ltd. ("Interinvest Canada") in Quebec, Canada, in Montreal

19

Superior Court seeking damages of over two million dollars ($2,000,000), alleging that Dr. Black misappropriated that amount that Herzog had invested with Dr. Black and Interinvest Canada, that Dr. Black did not return the investment when requested, that Dr. Black unlawfully invested the funds into Wi2Wi, that the Wi2Wi investment was done without Herzog's knowledge and in direct violation of his express and repeated instructions. The case settled. Dr. Black again defaulted on the settlement;

d.  On May 14, 2010, Ramzi Mahmoud Alharayeri filed a civil action in Quebec, Canada, in Montreal Superior Court against Dr. Black and other defendants seeking damages of over four million dollars ($4,000,000), alleging that Dr. Black and other Wi2Wi directors refused to finalize the conversion of Allharayeri's shares of Wi2Wi, refused to let him sell three hundred thousand (300,000) shares of Wi2Wi in 2007, frustrated his efforts to sell shares to a third party, undertook efforts to dilute his shares in Wi2Wi, refused to call shareholder meetings for Wi2Wi, and refused to disclose financial information. Allharayeri received a judgment against Dr. Black, but Dr. Black has not paid any money toward satisfaction of the judgment; and

e.  On November 10, 2011, Dr. Black filed an action against Nymox Pharmaceutical Corp. ("Nymox") in Quebec, Canada, in Montreal Superior Court. Nymox counter-claimed against Dr. Black alleging that he breached his fiduciary duty by failing to disclose several lawsuits filed against him. Nymox sought damages of two hundred forty-nine thousand dollars Canadian ($249,000 Cdl) on its counter-claims. The matter settled in December 2014.

20

f.  Although Dr. Black did disclose to Ms. Stanley that he had a misunderstanding with Regula Dobie, of Kenya, in September of 2008, he did not disclose that she filed a civil action against him and Interinvest (Bermuda) Limited to recover six million dollars ($6,000,000) that she invested through him, alleging that Dr. Black did not return Dobie's investment when requested, invested five million dollars ($5,000,000) of Dobie's funds in Wi2Wi without her permission, and that Dr. Black was chairman of the board at Wi2Wi. Dobie received a judgment and sought to enforce it in Canada. Dr. Black is in default and owes Dobie over five million dollars ($5,000,000);

104.  These civil actions and resulting liabilities were material: had Ms. Stanley known about them, she would not have invested and would have ceased investing through Dr. Black and Interinvest.

105.  Interinvest, Schmidt, and Alexander also failed to disclose Dr. Black's involvement in a number of regulatory investigations and resulting liabilities, including the following:

a.  In or about November 2007, the Authorite des marches financiers (the "AMF"), the securities regulator for the Canadian province of Quebec, initiated a regulatory action against Dr. Black for failing to disclose lawsuits to the AMF as required by Quebec law. On September 15, 2008, the AMF ordered that Dr. Black pay twenty-six thousand dollars Canadian ($26,000 Cdl) in fines. Dr. Black and Interinvest failed to report the regulatory action on Form ADV for over three (3) years;

21

b. Upon information and belief, on or about March 3, 2008, the AMF initiated a regulatory action against Interinvest Canada for violations of Canadian securities laws. On November 13, 2009, the AMF imposed fines of over forty thousand dollars Canadian ($40,000 Cdl). The regulatory action and fines were not reported by Interinvest or Dr. Black on Form ADV;

c. In December of 2012, the AMF initiated a regulatory action against Interinvest Canada for failing to provide audited financial statements to the AMF, among other filings. Interinvest Canada was suspended as an investment advisor in Quebec by the AMF and was fined thirty-five thousand dollars Canadian ($35,000 Cdl). The regulatory action and fines were not reported by Interinvest or Dr. Black on Form ADV; and

d. In March of 2015, the State of New Hampshire, Department of State, Bureau of Securities Regulation, submitted a petition to the Director of the Bureau of Securities Regulation for relief against Dr. Black and Interinvest, specifically but not limited to, an order to permanently bar Dr. Black and Interinvest from securities licensure in the State of New Hampshire, pay fines, and pay restitution, as a result of violations of securities laws including fraud. The regulatory investigation, filing, and fines sought by New Hampshire were not disclosed to Ms. Stanley by Interinvest or Dr. Black. In December of 2015, a motion for summary judgment was granted against Dr. Black in that matter. He was ordered to pay approximately $716,000 in administrative fines, investigation fees, restitution for realized losses, and excessive fees charged to those investors. Alexander and Schmidt were not named as defendants in the matter but they were

22

named in the New Hampshire Securities Bureau investigation. Schmidt and Alexander entered into Consent Orders mandating that Schmidt pay restitution in the amount of $35,000[1] to investors and Alexander to pay $13,750 to the New Hampshire Bureau of Securities as a result of the settlement of the investigation and abide by certain other regulatory conditions.[2]

106.    These regulatory actions and resulting liabilities were material: had Interinvest timely disclosed them, Ms. Stanley would not have invested and would have ceased investing through Dr. Black and Interinvest.

107.    Schmidt acted as President of Interinvest at various times throughout Interinvest's investment relationship with Ms. Stanley.

108.    In his capacity as President, Schmidt directly controlled Interinvest and its agents, including Dr. Black.

109.    Alexander acted as Portfolio Manager, Director, President, CEO, and Chief Compliance officer of Interinvest from 2009 until 2014.

110.    Further, in his capacity as Portfolio Manager, Director and President, Alexander directly controlled Interinvest and its agents, including Dr. Black.

111.    Schmidt and Alexander failed or refused to notify Ms. Stanley of the numerous civil actions and regulatory actions Dr. Black and/or Interinvest was implicated in, despite their clear materiality.

112.    Schmidt and Alexander failed to disclose Dr. Black's extensive conflicts of interest and compensation arrangements with a number of companies, despite their clear materiality.

---

[1] See Consent Order and Censures against Schmidt and Alexander attached hereto as Exhibit G.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

113.    As a result of the Defendants' conduct, Ms. Stanley sustained catastrophic losses from the Stanley Custodial Accounts in an amount to be determined.

## LORETTA CLUNE

114.    In 1989, Mrs. Clune's husband became ill with cancer and passed away.

115.    Mrs. Clune was fifty-five (55) years old at the time, and was supporting four (4) children and their educational expenses. Mrs. Clune's brothers offered to help her financially by making some investments for her and helping her to oversee her portfolio.

116.    In 2001, Mrs. Clune's nephew began working with Dr. Black at Interinvest. After four (4) years of working with Dr. Black, Mrs. Clune's nephew felt that Dr. Black was smart, conservative, well-respected, and that client accounts had generally performed well on average under Dr. Black's watch.

117.    Mrs. Clune's investments had been underperforming, and based on her nephew's assessment of Dr. Black, she decided to move her investments to Dr. Black's care in or around 2006.

118.    In or around January of 2006, Mrs. Clune opened two (2) accounts and entered into Investment Agreements with Dr. Black. Mrs. Clune transferred a total of one million five hundred thirty one thousand four hundred forty four dollars ($1,531,444) into Dr. Black's care: one million one hundred sixty four thousand one hundred seven dollars ($1,164,107) into an IRA account and three hundred sixty seven thousand three hundred thirty seven dollars ($367,337) into an investment account.

119.    Because Mrs. Clune relied on these funds for her living expenses, each time she needed to make a withdrawal from one of her accounts, she simply called Interinvest and spoke

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

with Schmidt or Patti, another Interinvest employee, to make arrangements for such a withdrawal.

120.    By 2008, Mrs. Clune's portfolio had declined in value. However, the market was unhealthy and her relative loss was normal at that time, so this decline in performance did not cause Mrs. Clune concern. She was generally pleased with Dr. Black's management of her assets at the time.

121.    In or around November of 2010, Mrs. Clune felt confident with Dr. Black's abilities and was pleased with the recovery of her accounts. In December of 2010, she decided to invest an additional two hundred thousand dollars ($200,000) with Dr. Black, increasing the total amount of her profile to approximately one million eight hundred thousand dollars ($1,800,000).

122.    In or around December of 2010, Mrs. Clune's nephew accepted a job offer with another company. At the time her nephew left Interinvest, Mrs. Clune's total portfolio was valued at more than two million dollars ($2,000,000).

123.    Beginning after her nephew left Interinvest, Mrs. Clune began to observe a slow decline in the value of her portfolio. When she inquired as to what occurred, Interinvest reassured her that the market fluctuates and not to be concerned. Her portfolio declined to one million seven hundred ninety thousand dollars ($1,790,000) in December of 2011 and one million six hundred ninety thousand dollars ($1,690,000) in December of 2012.

124.    After having worked with Dr. Black for several years without incident, Mrs. Clune had begun to trust Dr. Black.

125.    However, by December of 2013, Dr. Black had purchased large quantities of Tyhee, Cornerstone, Wi2Wi, Cereplast ,GCX, Amorfix, SanGold and Williams Creek Gold.

25

126.     In December of 2013, Dr. Black and/or Interinvest also authorized a wire transfer of fifty thousand dollars ($50,000) to a bank in Santa Clara, California for an unsecured note to Wi2Wi.

127.     The Wi2Wi unsecured note did not appear in Mrs. Clune's account until April of 2014.  When it did, it was valued at a mere five hundred dollars ($500).

128.     By December of 2014, her portfolio value had dropped to one million three hundred thousand dollars ($1,300,000).

129.     After again observing a significant decline in her portfolio values, Mrs. Clune contacted Interinvest to voice her growing concern.  Once again, Mrs. Clune was reassured that these fluctuations were normal.

130.     On or around April 6, 2015, Mrs. Clune received a letter from State Street informing her that Dr. Black and Interinvest had a complaint filed against them in New Hampshire.  See Exhibit H, letter from State Street.

131.     Interinvest, Dr. Black, Schmidt, and Alexander failed to disclose the extent of Dr. Black's affiliations or compensation arrangements with many of the companies in her portfolio, Dr. Black's involvement in a number of regulatory investigations and resulting liabilities, or his involvement in multiple civil actions and the significant liabilities that resulted from those matters.

132.     This information was material: had Interinvest timely disclosed them, Mrs. Clune would not have invested and would have ceased investing through Dr. Black and Interinvest.

133.     Mrs. Clune and her family immediately mobilized to determine the extent of her damages.

26

134.    Mrs. Clune and her family discovered Dr. Black's personal involvement with many of the companies in her portfolio, including Wi2Wi, Amorfix, Tyhee, and Williams Creek.

135.    They discovered that Dr. Black and Interinvest continued to make further purchases in all of these companies even after values had plummeted to less than pennies per share.

136.    Mrs. Clune's nephew, who formerly worked for Interinvest, requested a conference call with Dr. Black to discuss the portfolio.  This call took place in April 2015.

137.    Dr. Black agreed to the telephone call but stated that he was out of the country having cataract surgery and that he did not have her portfolio in front of him.

138.    When questioned, Dr. Black attempted to defend his purchases in the portfolio. When he was asked tougher questions, he mysteriously disconnected the call and Mrs. Clune and her family were unable to reach him again.

139.    Despite Mrs. Clune's desire that Dr. Black maintain a conservative approach to managing her assets, Dr. Black had invested nearly all of her portfolio in high-risk securities. The portfolio's total market value had plummeted to approximately one million dollars ($1,000,000).  The total cash remaining in her accounts amounted to no more than eighty nine thousand dollars ($89,000).

140.    Upon information and belief, there is no liability insurance available to Defendants that may be used to satisfy any judgment against them in this action.

**COUNT I**
**Violation of Securities and Exchange Act of 1934 § 10(b) and 17 C.F.R. § 240.10(b)(5)**
**(Interinvest Corporation, Dr. Hans P. Black, Schmidt and Alexander)**

141.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 140 of this Complaint as if fully set forth herein.

27

142.     The Amorfix, Tyhee, Wi2Wi, Williams Creek Gold, and Direxion investments were unsuited to any of the Plaintiffs' needs because their investment objectives called for conservative investment plans that focused on preservation of capital, yet these investments were very high risk and very thinly traded.

143.     Interinvest, Dr. Black, Schmidt and Alexander were aware of each of the Plaintiffs' stated investment objectives and stated desires for a conservative investment plans.

144.     Interinvest and Dr. Black, ignoring Plaintiffs' conservative tolerance for risk, purchased substantial positions in Amorfix, Tyhee, Wi2Wi, Williams Creek Gold, and Direxion and placed them in the Plaintiffs' custodial accounts.

145.     Even following Ms. Stanley's explicit instruction to take no action on her accounts without first obtaining her approval, Dr. Black and Interinvest continued to trade on the Stanley Custodial Accounts.

146.     Interinvest and Dr. Black failed or refused to remove the Wi2Wi stock from Ms. Stanley's account, despite multiple requests that they do so at once.

147.     Interinvest, Dr. Black, Schmidt and Alexander did not disclose that Dr. Black received substantial amounts of compensation and stock options from Amorfix, Tyhee, Wi2Wi, and Williams Creek Gold, despite owing Plaintiffs a duty to disclose this material information.

148.     Interinvest, Dr. Black, Schmidt and Alexander owed Plaintiffs an obligation to disclose the numerous civil and regulatory actions that existed involving Dr. Black, but failed to do so.

149.     The above described conduct was an extensive effort to employ a device, scheme or artifice to defraud the Plaintiffs through both making misstatements of material facts and omitting to state material facts necessary in order make statements made, in the light of

28

circumstances under which they were made, not misleading. The material statements were made in connection with the purchase and sale of securities.

150.     Plaintiffs justifiably relied on Interinvest, Dr. Black, Schmidt and Alexander to appropriately manage their accounts consistently with their instructions and act in their best interests.

151.     Dr. Black and Interinvest's actions have caused, and continue to cause, Plaintiffs substantial losses, damages and harm in an amount to be determined.

**COUNT II**
**Fraud**
**(Dr. Hans P. Black)**

152.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 151 of this Complaint as if fully set forth herein.

153.     Dr. Black represented to Plaintiffs that he was able to, and in fact would, manage their accounts in a manner that was consistent with their stated objectives and in their best interest. He made these representations to the Plaintiffs with the intent that the Plaintiffs would rely upon him which they did.

154.     Dr. Black asserted in a letter on Interinvest's website that his approach to investment is similar to that of the practice of medicine, assuring that "our orientation towards the preservation of principal, first and foremost, equates to the Hippocratic oath, Do No Harm." See Exhibit I, Letter from Hans Black.

155.     Dr. Black represented that it was his and Interinvest's "aim to structure portfolios that embrace excellent growth potential and below average risk characteristics."

156.     The Amorfix, Tyhee, Wi2Wi, Williams Creek Gold, and Direxion investments were unsuited to each Plaintiff's needs because their investment objectives called for a

29

conservative investment plan that focused on preservation of capital, yet these investments were very high risk.

157. Dr. Black, being a highly experienced investment adviser, knew that these investments were very high-risk.

158. Dr. Black was aware of each Plaintiff's stated investment objectives and their stated desire for a conservative investment plan because they had articulated that desire on multiple occasions.

159. Dr. Black, ignoring the Plaintiffs' conservative tolerance for risk, purchased substantial positions in Amorfix, Tyhee, Wi2Wi, Williams Creek Gold, and Direxion and placed them in their accounts.

160. Even following Ms. Stanley's explicit instruction to take no action on her accounts without first obtaining her approval, Dr. Black continued to trade on the Stanley Custodial Accounts.

161. Despite Mrs. Clune having revoked Dr. Black's authority to trade on her accounts, he continued to do so.

162. Dr. Black failed and refused to remove the Wi2Wi stock from Ms. Stanley's account, despite multiple requests that they do so at once.

163. Dr. Black deceived and did not disclose to Plaintiffs that he received substantial amounts of compensation and stock options from Amorfix, Tyhee, Wi2Wi, and Williams Creek Gold, despite owing a duty to disclose this material information.

164. Dr. Black owed Plaintiffs an obligation to disclose the numerous civil and regulatory actions that implicated him, but failed to do so.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

165. Plaintiffs justifiably relied on Dr. Black to appropriately manage their custodial accounts consistent with their instructions and to act in their best interests.

166. Dr. Black intentionally engaged in a pattern of extraordinarily risky investment practices, self-dealing, and fraudulent activities that were intended to cause harm to the Plaintiffs and benefited him personally.

167. As a result of Dr. Black's fraudulent activities, Plaintiffs have been injured and damaged in an amount to be determined.

## COUNT III
### Negligence
### (Interinvest Corporation, Dr. Hans P. Black)

168. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 167 of this Complaint as if fully set forth herein.

169. Dr. Black and Interinvest had discretionary authority over each of Plaintiff's custodial accounts and thus owed them a duty to manage their accounts in a way that reflected their stated investment objectives and to act in their best interests.

170. Dr. Black and Interinvest breached that duty to Plaintiffs by:

a. Failing  to invest in companies that furthered each Plaintiff's individual investment objectives;

b. Failing to follow the rules set by Plaintiffs for management of their accounts;

c. Failing to disclose Dr. Black's material conflicts of interest, including significant company affiliations and compensation arrangements with companies that Dr. Black and Interinvest placed in each Plaintiff's investment portfolio;

d. Failing to adequately monitor and promptly correct alleged errors in the Stanley Custodial Accounts;

31

e. Failing to disclose numerous, material civil and regulatory actions and their resulting liabilities;

f. Failing to promptly and adequately respond to requests for information;

g. Failing to remove Wi2Wi from Ms. Stanley's investments, despite repeated instructions to do so; and

171. Due to Interinvest and Dr. Black's negligence, Plaintiffs have sustained significant damages in an amount to be determined.

## COUNT IV
### Negligence
### (Alexander R. Black)

172. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 171 of this Complaint as if fully set forth herein.

173. Alexander was employed by Interinvest until August of 2014 and acted as a Portfolio Manager, Director, President, and Chief Compliance Officer.

174. As Chief Compliance Officer, Alexander had an obligation to:

a. Supervise Interinvest employees, including Dr. Black;

b. Ensure that all proper disclosures were made to Interinvest clients with respect to material conflicts of interest, compensation arrangements, and legal and regulatory events; and

c. Ensure that securities traded in client accounts were suitable for those clients and in conformity with their stated investment objectives.

175. Alexander breached that duty by:

a. Failing to adequately supervise Dr. Black;

32

b. Failing to adequately disclose significant compensation arrangements, conflicts of interest, and affiliations of both Interinvest and Dr. Black;

c. Failing to adequately disclose numerous civil and regulatory actions arising out of Dr. Black's conduct with respect to investment management that resulted in significant financial liabilities; and

d. Failing to ensure that securities were suitable for Interinvest clients' objectives.

176. As President of Interinvest, Alexander also directly controlled employees and agents of Interinvest, including Dr. Black, and failed to properly supervise him.

177. Despite Dr. Black's widespread and blatant actions, errors and/or omissions, Alexander failed to intervene.

178. Due to Alexander's negligence, Plaintiffs have sustained significant damages in an amount to be determined.

**COUNT V**
**Negligence**
**(Stanley T. Schmidt)**

179. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 178 of this Complaint as if fully set forth herein.

180. Schmidt served as President of Interinvest in the time during which some of Dr. Black's negligent and/or fraudulent acts occurred.

181. As President of Interinvest, Schmidt exercised direct control over employees and agents of Interinvest, including Dr. Black, and failed to adequately supervise him.

182. Despite Dr. Black's widespread and blatant actions, errors and/or omissions, Schmidt failed to intervene.

33

183.     Due to Schmidt's negligence, Plaintiffs have sustained significant damages in an amount to be determined.

**COUNT VI**
**Breach of Fiduciary Duty**
**(Dr. Hans P. Black)**

184.     Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1 through 183 of this Complaint as if fully set forth herein.

185.     Dr. Black owed Plaintiffs a fiduciary duty because he acted as an investment adviser and exercised discretionary authority over each Plaintiff's custodial accounts.

186.     Dr. Black also purchased and sold securities on behalf of Plaintiffs through their custodial accounts.

187.     Dr. Black breached his fiduciary obligations to Plaintiffs by:

    a.  Acting in a self-interested manner by failing to disclose his significant affiliations and compensation arrangements with a number of companies that he placed in their investment portfolios;

    b.  Acting in a self-interested manner by purchasing positions in companies in which Dr. Black had a significant financial stake and over which he exercised significant control, despite their unsuitability for each Plaintiff's needs;

    c.  Failing to manage Plaintiffs' accounts in a manner consistent with their stated investment objectives;

    d.  Failing to properly monitor Ms. Stanley's account to ensure that it did not contain errors and failing to remedy errors that were brought to his attention by Ms. Stanley;

34

e. Failing or refusing to follow the account rules set by Plaintiffs with respect to the management of their custodial accounts.

188. As a result of these breaches, Plaintiffs have suffered and continue to suffer damages in an amount to be determined.

## COUNT VII
### Breach of Contract
### (Interinvest)

189. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 188 of this Complaint as if fully set forth herein.

190. Interinvest entered into Investment Advisory Agreements with Ms. Stanley and Mrs. Clune.

191. The Investment Advisory Agreements are valid and enforceable contracts.

192. Interinvest breached the agreements by failing and/or refusing to manage Plaintiffs' investment portfolios consistently with the financial goals set forth in each agreement, as set forth in the preceding paragraphs.

193. Plaintiffs were harmed by Interinvest's breaches in an amount to be determined.

## COUNT VIII
### Injunctive Relief
### (Stanley T. Schmidt)

194. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 193 of this Complaint as if fully set forth herein.

195. Schmidt owns real property located at 194 Locust Hill Road, Shelburne, Vermont.

196. Upon information and belief, Schmidt has very few assets available to satisfy judgment in this matter.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

197. Upon information and belief, if Schmidt were to transfer, assign, convey, encumber or otherwise dispose of his ownership interest the property located at 194 Locust Hill Road, Shelburne, Vermont, it would cause Plaintiffs irreparable harm because it would leave Plaintiffs without adequate remedy for their claims because there are few identifiable assets among the defendants.

198. Plaintiffs have demonstrated a reasonable likelihood of success on the merits on their claims and will suffer irreparable harm if the injunction if a temporary restraining order and after a hearing a preliminary injunction is not granted prohibiting Schmidt from transferring, assigning, conveying, encumbering or otherwise disposing of his ownership interest in the property located at 194 Locust Hill Road, Shelburne, Vermont.

199. Schmidt, conversely, will suffer little to no harm because the injunction simply maintains the status quo, preventing him from transferring, assigning, conveying, encumbering, or otherwise disposing of his ownership interest in such real property that may be used in the future to satisfy a judgment against him and serves the public interest in enforcing judgments.

## COUNT IX
### Injunctive Relief
**(Alexander R. Black and Reach and Apply Defendant Highbank Properties, Inc.)**

200. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 199 of this Complaint as if fully set forth herein.

201. Upon information and belief, Highbank holds property in which Alexander has a beneficial interest.

202. Upon information and belief, Alexander has very few assets available to satisfy a judgment in this matter.

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

203.    Upon information and belief, if Alexander were to transfer, assign, convey, encumber or otherwise dispose of his beneficial ownership interest the property held by Highbank, it would cause Plaintiffs irreparable harm because it would leave Plaintiffs without adequate remedy for their claims because there are few identifiable assets among the defendants.

204.    Plaintiffs have demonstrated a reasonable likelihood of success on the merits on their claims and will suffer irreparable harm if a temporary restraining order and after a hearing a preliminary injunction is not granted restraining Highbank from transferring, assigning, conveying, encumbering or otherwise disposing of Alexander's beneficial interest in Highbank.

205.    Conversely, Alexander will suffer little to no harm because the injunctive relief simply maintains the status quo, preventing him from transferring, assigning, conveying, encumbering or disposing of his beneficial interest in Highbank that may be used in the future to satisfy a judgment against him and serves the public interest in enforcing judgments.

## COUNT X
### *Ex Parte* Attachment on Trustee Process

206.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 205 of this Complaint as if fully set forth herein.

207.    Upon information and belief, Interinvest, Schmidt, and/or Alexander maintain goods, effects, monies, accounts, deposits, credits, common stock or marketable securities  in their own names individually, or jointly with others or for their benefit on deposit at one or more of the Defendant Trustees.

208.    Upon information and belief,  if Interinvest, Schmidt or Alexander are notified in advance of the attempt to obtain a temporary restraining order or attachment on trustee process, there is a clear danger that they will withdraw the goods or credits from the hands and possession of the trustees and remove them from the state or conceal them and there is immediate danger

37

that they will dissipate the credits, or damage or destroy the goods to be attached on trustee process.

209.    Upon information and belief there is a reasonable likelihood, that Plaintiffs will recover a judgment in an amount over and above any liability insurance known to be available and that the losses Defendants caused to Plaintiffs will exceed the $2,000,000 attachment on trustee process and likely judgment Plaintiffs will obtain.


210.    Plaintiffs are entitled to an attachment on trustee process in an amount up to $2,000,000 on goods, effects, monies, accounts, deposits, credits, common stock or marketable securities  in their own names individually, or jointly with others or for their benefit on deposit at one or more of the Defendant Trustees by Interinvest, Schmidt, and/or Alexander, as security for the judgment Plaintiffs expect to receive.

WHEREFORE, Jean L. Stanley and Loretta Clune respectfully request that this Court:

A.    Enter judgment in their favor and against Defendants on all counts and award damages in an amount to be determined at trial, together with costs and interest;

B.    Enter an *ex parte* temporary restraining order and after a hearing a preliminary injunction prohibiting Defendant Interinvest Corporation, Inc. from conveying, transferring, alienating, selling, hypothecating, encumbering, or in any manner disposing of any interest which it owns directly or indirectly in any real property and/or in any personal property without the prior approval of this Court;

C.    Enter a temporary restraining order and after a hearing a preliminary injunction prohibiting Defendant Stanley T. Schmidt from conveying, transferring, alienating, selling, hypothecating, encumbering, or in any manner disposing of any interest which he owns directly or indirectly in any real property and/or in any personal property, including but not limited to the property located at 194 Locust Hill Road, Shelburne, Vermont, except for ordinary living expense up to a reasonable amount per month, without the prior approval of this Court;

38

D. Enter a temporary restraining order and after a hearing a preliminary injunction prohibiting Defendant Alexander Black from conveying, transferring, alienating, selling, hypothecating, encumbering, or in any manner disposing of any interest which he owns directly or indirectly in any real property and/or in any personal property, including but not limited to the property located at 141 Highbank Road, South Yarmouth, Massachusetts except for ordinary living expenses up to a reasonable amount per month, without the prior approval of this Court;

E. Enter a temporary restraining order and after a hearing a preliminary injunction prohibiting Reach and Apply Defendant Highbank and Defendant Alexander from transferring, assigning, conveying, encumbering or otherwise disposing of Alexander's beneficial interest in the property held by Highbank;

F. Grant Plaintiffs' requests for *ex parte* attachments on trustee process in the amount of $2,000,000; and

G. Grant such other and further relief as justice deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs Jean L. Stanley and Loretta Clune hereby demand a jury trial on all issues so triable.

JEAN L. STANLEY AND LORETTA CLUNE,
By Their Attorneys,

/s/Pamela E. Berman
Pamela E. Berman (BBO #551806)
AiVi Nguyen (BBO #675319)
Jennifer L. Garner (BBO #688754)
BOWDITCH & DEWEY, LLP
One International Place, 44th Fl.
Boston, MA 02110
Telephone: 617-757-6538
Facsimile: 508-929-3138
E-mail: pberman@bowditch.com

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;3}

## VERIFICATION

I, Jean L. Stanley, having read the foregoing Verified Complaint, make oath that the facts recited therein are true and correct, except as to matters therein stated to be on information and belief, and as to those matters I believe them to be true to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS *23* DAY OF DECEMBER, 2016.

_____
Jean L. Stanley

{Client Files/311684/0001/STANLEY/BLACK/B0638262.DOCX;2}

## VERIFICATION

I, Loretta Clune, having read the foregoing Verified Complaint, make oath that the facts recited therein are true and correct, except as to matters therein stated to be on information and belief, and as to those matters I believe them to be true to the best of my knowledge, information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _25_ DAY OF DECEMBER, 2016.

_____
Loretta Clune

41